## JERRY GREEN V. THE STATE.

### No. 4119. Decided May 12, 1909.

**1.—Local Option—Sale—Gift—Club Room—Agency.**

Where upon trial of a violation of the local option law, the evidence showed that the defendant was the owner or manager of a so-called club room where whisky was sold, and that he directed his agent to give or let prosecutor have a bottle of whisky; that the prosecutor received the whisky from the hands of the said agent and left the money on the counter for the whisky, some distance from where defendant was, the evidence was sufficient to sustain the conviction; although defendant denied that he sold the whisky or got the money for it, but claimed that it was a gift.

**2.—Same—Evidence—Shorthand Facts—Conclusion of Witness.**

Upon trial for a violation of the local option law, there was no error in permitting a State's witness to answer to a question as to who was in control of the club where the transaction took place, that it was the defendant. This was not a conclusion of the witness, but a shorthand rendering of the facts.

**3.—Same—Evidence—Contradicting Witness—Custom.**

Where upon trial for a violation of the local option law, the defendant claimed that he gave the whisky in question to the prosecutor who was an officer, there was no error to permit the State to contradict this line of defense, and show on cross-examination that this was not defendant's custom.

Appeal from the County Court of Brown. Tried below before the Hon. A. M. Brumfield.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $100 and thirty days confinement in the county jail.

The opinion states the case.

*Harrison & Wayman,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was convicted in the County Court of Brown County on a charge of selling intoxicating liquors in said county in violation of the local option law, and his punishment assessed at a fine of $100 and thirty days imprisonment in the county jail. He appeals to this court and assigns a number of reasons why the judgment should be reversed.

The only important question arising in the case is as to the sufficiency of the evidence. It was admitted by all parties that the local option law was in force and had been in force in Brown County, Texas, from and since the 16th day of November, A. D. 1906, up to and including the day of the trial of this cause. The testimony introduced by the State and defendant respectively is as follows: "My name is A. A. Jett. I live at present in the country, about two miles from Brownwood, and am a farmer. On or about the 25th day of October, 1907, I went into a certain club room known as the Tennessee Club, on the south side of the square in

Brownwood, Brown County, Texas, approached one Houston May-
field, who was behind the counter or bar in said club room. I told
him that I wanted a bottle of whisky. Mayfield said I would have to
see the defendant, Jerry Green. Defendant was sitting on a chair at
the far end of the bar near a telephone. I then walked up to the
defendant, and told him that I wanted a bottle of whisky, where-
upon he turned to Mayfield and said, "Give him or let him have
a bottle of whisky." Mayfield then wrapped up a quart bottle of
whisky and handed it to me, whereupon I laid $2 on the counter in
front of Mayfield, but some fifteen feet from where defendant was
sitting. I then walked out. I suppose this was Jerry Green's place
of business, and that he was in control. Cross-examined by de-
fendant, the witness testified: This is the only time that I have had a
transaction in this club. Defendant never did touch the whisky
or come down to where I was having the transaction with Mayfield.
I do not know whether he saw me put the money on the counter in
front of Mayfield or not, or I do not know whether he paid any
more attention to the transaction after I spoke to him about getting
the whisky. I do not remember the exact words that he said when
I asked him if I could get some whisky. He either said, "Let him
have it, or give him a bottle of whisky." The witness further
testified that at this time, and when he came into this club room
and had this transaction, he was acting as a guard, guarding con-
victs, and had with him some convicts at that time. That among
other convicts that went with him into the club room, was one negro
by the name of Jag Patterson, who was then serving a term on the
county road for bootlegging in Brownwood. That there were two or
three other prisoners also present. He further testified that defend-
ant, as well as Mayfield, saw these prisoners. Defendant testified
in his own behalf as follows: "My name is Jerry Green. I live in
Brownwood, and have lived here for some ten or fifteen years. I
remember the transaction detailed by the witness A. A. Jett. I
remember Jett having come into the old Tennessee Club down on the
square sometime in the fall of 1907, and that he was accompanied
by a number of county convicts. I remember him asking me for a
bottle of whisky, and that I told Mayfield to give him a bottle of
whisky. I do not remember whether I was the owner of the club
room or not. I owned that club at one time. Whether I was the
owner or not, I might have been around there, and might have had
whisky, and probably did, of my own there. I did not instruct
Mayfield to sell him any whisky, but I told him to give him a
bottle of whisky. I knew at the time that he was a deputy sheriff,
and that he was then guarding convicts. I would not have been
selling had I been in the whisky business, a bottle of whisky or
telling anyone to do it for me, to a deputy sheriff. I did not see
prosecuting witness put $2 on the counter in front of Mayfield,
nor did I ever receive the $2 if it was put there. If it was ever

received by Mayfield it was done without my knowledge and consent, and against my express instruction, for I told him to give Jett the bottle of whisky." Cross-examined by the State, defendant testified: "I do not remember whether I was the owner of that club at that time or not. It has been so long ago that I do not now remember. I might have been around, or I might have owned it. I do not remember whether I had United States license to sell liquor at that time or not. I have no memory along this line as to whether I had license. I may have had or I may not have had." Asked as to whether he did not have license all the time he ran a club in Brownwood, the witness stated that he probably did have some kind of license, but that he does not remember whether they were malt liquor license, or license for the sale of intoxicating liquors of all kinds. "I did not receive any money from Mayfield for this whisky, and if he received any money he got it without my knowledge or consent. I intended to give this whisky to State's witness Jett, and so instructed Mayfield. No, I did not make it a rule to give away whisky at that time, but I never did charge officers for anything. I think I have told pretty near all of the officers that if they ever wanted any whisky or anything to drink, and if I had it, to come and get it." Asked as to how many quarts of whisky he had given away to officers, the witness testified that he could not now remember, but that he had given away a good many. Asked to name those to whom he had given whisky about this time, he testified that he could not remember all the parties, or but few of them. That he remembers to have given deputy city marshal, John Champion, as many as two bottles, at or about that time; that he remembers to have given Jim Combs, constable of that precinct, a number of bottles of whisky, and that he had given whisky to other officers. Speaking to the county attorney, the witness stated that he did not then recall whether he had given the county attorney any whisky or not, but that he remembers to have told him that if he ever wanted anything to come around and he could have it free of charge; that he does not now recall definitely whether he had gotten any whisky from him. "I can not say how much whisky I have given away to officers at various times." On redirect examination, witness testified that if he was in fact running this club at that time, that he was dealing in nonintoxicating malt liquors, and keeping whisky and beer on storage for others. That this was the way club business was conducted back at that time. He further testified that he did not know this man was an officer, and that he certainly would not have sold him a bottle of whisky at that time, and that he told Mayfield to give him the whisky and not to sell it to him. The State next introduced Frank Imeson, sheriff of Brown County, Texas, who testified that in the fall of 1907, he was sheriff of Brown County; that at that time A. A. Jett was employed for the

purpose of guarding county convicts while working on the county road.

The court gave an unexceptional charge to the jury, and at the request of appellant gave five special charges, presenting every phase of the case most favorably to appellant. Among other things, the court charged the jury that before they could convict the defendant they must believe beyond a reasonable doubt that the defendant got the money left on the counter by the witness Jett, or that Mayfield got it for him, and in either case that the appellant knew at the time said money was so received, if it was so received, that it was left there by Jett for the purpose of paying for the bottle of whisky. They were further charged that before they could convict appellant they must believe from the evidence beyond a reasonable doubt that Mayfield at the time of delivering the quart of whisky, and at the time of receiving the $2 left by the witness Jett on the counter, if they believe he did receive it, was employed by and acting for appellant, and that said whisky was delivered and money received, if it was accepted, was so accepted in payment for said whisky with the knowledge and consent of appellant; and, further, that even though they should find from the evidence in this case that Mayfield sold to the witness Jett, if he did sell to him, a bottle of whisky, they will not consider such circumstance as evidence against appellant unless they further believe from the evidence beyond a reasonable doubt that said sale was made by said Mayfield as agent for appellant and with his knowledge and consent. The jury were also instructed that before they could convict they must believe from the evidence beyond a reasonable doubt that appellant was in actual charge, control and management of the club in which the transaction took place, and unless they so believe beyond a reasonable doubt, they will acquit the appellant. They were further instructed that if they believe from the evidence that appellant gave and intended Mayfield to give to said Jett the whisky in question, or if they had a reasonable doubt as to whether such was the case, they would acquit. We think the evidence well justifies the conclusion that Mayfield sold the whisky to Jett as the agent of and under the direction of appellant. The mere fact that when approached for the whisky Mayfield directed Jett to see appellant, the interview with appellant and his suggestion to give or let Jett have a bottle of whisky, the payment for same and the attendant circumstances make it clear to our minds that it was a sale with the knowledge and at the suggestion of appellant. The jury must have known that the business was prohibited. They must have reasoned that it was not every one to whom Mayfield would sell who would be equally as guilty as appellant would be for selling whisky in violation of the law. Mayfield's suggestion for him to see appellant (there was no one else present) was a recognition of his proprietorship and his right to give direction for the sale of the whisky. Ap-

pellant's remark to give or let him have a bottle of whisky is in harmony with the authorization to make the sale and does not imply of necessity a gift pure and simple as such.

We do not believe there was error in admitting in evidence the testimony of Jett as to who was in charge of the business. The questions asked him were as follows: "Who was in control of said club in which you had the transaction detailed by you in this case? Who was managing said business of club?" The reply was that the defendant, Jerry Green, had control or was managing said club. This was a shorthand rendering of the facts, and while expressed in the form of a conclusion, was after all a statement of the facts without perhaps giving as full a statement as could have been elicited on cross-examination of the facts and circumstances upon which this statement was based. Nor was there error in permitting the cross-examination of appellant as to his gift of whisky to other officers. The State was attacking the idea of gift and was seeking to show the improbability that appellant was voluntarily parting with property of the value of two dollars to a man having no claim on him; was undertaking to show that the claim that the appellant gave him the whisky because he was an officer was untrue and a mere pretense, and to demonstrate this fact, was seeking to show a line of conduct out of harmony with appellant's claim. The case seems to have been carefully tried. Every possible issue pertinently arising under the facts was presented in instructions of the most favorable character. So we believe we would be utterly without excuse to reverse the judgment of conviction. The judgment is therefore affirmed.

*Affirmed.*